### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **CAROL JEAN JAMES** | § | |
| | § | **7:02-CV-0291-KA** |
| | § | **Consolidated with:** |
| | § | **7:03-CV-004-KA** |
| | § | **7:03-CV-005-KA** |
| vs. | § | **7:03-CV-006-KA** |
| | § | **7:03-CV-008-KA** |
| | § | **7:03-CV-009-KA** |
| **NOCONA GENERAL HOSPITAL,** | § | **7:03-CV-0022-KA** |
| *et al.* | § | **7:03-CV-0034-KA** |
| | § | **7:03-CV-0040-KA** |
| | § | **7:03-CV-0042-KA** |

## MEMORANDUM AND ORDER ON MOTION TO REINSTATE

By the Court's own invitation during pre-trial conference held September 11, 2006, the

parties were permitted to address by brief and argument whether the common law negligence causes

of action heretofore dismissed without prejudice should be reinstated and allowed to proceed to trial

in this Court along with the § 1983 Constitutional causes of action. Plaintiffs answered the Court's

invitation by filing Rule 60(b)(6) Motion to Reinstate Negligence Claims with Brief. Having

reviewed the same, I conclude that this Court, in the exercise of its discretion, has the authority and

power to reinstate the negligence claims that were previously dismissed without prejudice on

abstention grounds. See *Shean v White*, 620 F.Supp. 1329 (N.D. Tx 1985). However, whether

reinstatement should be allowed is a matter for the Court's exercise of discretion.

### Procedural History

These ten cases were filed in federal court beginning December 23, 2002 through February

13, 2003. Companion cases were filed in the State District Court for Montague County, Texas.[1]  In July 2002, Defendant nurse Vicki Dawn Jackson was indicted in Montague County for two of the deaths and in January 2004 for four more deaths. Subsequent indictments increased the total number of indicted cases to ten. In September 2004, after the cases had been pending over eighteen months, the District Court, upon my recommendation, entered orders (1) dismissing all claims against certain defendants, (2) dismissing the negligence causes of action without prejudice, and (3) staying this action for up to a year pending resolution of the criminal cases against Vicki Dawn Jackson and determination of the state civil cases. In April 2006, the parties consented to trial of these cases by the Magistrate Judge.

On October 3, 2006, Vicki Dawn Jackson entered a "no contest" plea to an indictment for capital murder that names ten alleged victims. On October 6, 2006, she was found guilty of capital murder as alleged in that indictment, was sentenced to a life term, and waived appeal. On October 16, 2006 the remaining indictments were dismissed with prejudice by the Montague County District Court.  No further criminal prosecutions of Nurse Jackson arising out of the incidents are contemplated.

The negligence causes of action (essentially medical malpractice/health care negligence torts) were dismissed without prejudice upon a combination of *Pullman* abstention and *Colorado River* abstention grounds. *Pullman* was implicated because state court negligence issues appeared to be dependent upon state court law rulings regarding the duties of the respective parties owed to the various decedents, i.e., duties prescribed statutorily to hospital districts, pharmacists, licensed nurses

---

[1] Cause No. 7:03-CV-006 was founded upon diversity of citizenship and did not have a companion State Court filing.

and physicians, and possibly common law negligence issues that appeared at the time to control the federal Constitutional issues as well (i.e., whether the defendants were deliberately indifferent to such duties or to the results of their failures to abide by such duties). A *Colorado River* abstention[2] was likewise recognized since there were parallel state civil actions, as well as the significant criminal[3] actions creating the exceptional circumstances justifying the abstention. Now, at the Court's invitation, the issue of the wisdom of such abstention has been raised by the Plaintiffs by the subject Motion.

Upon further reflection as to the *Pullman* grounds for abstention, I believe that the state law issues of duty, scope of duty, and negligence will not be controlling as to the § 1983 Constitutional causes of action. The § 1983 causes will focus upon more global standards of knowledge and/or notice of risk of harm and deliberate indifference to such risks. This is a focus on risk, not upon the more narrow proscribed conduct implicated in the negligence cases. The Constitutional issues turn upon the conduct of the Defendants globally as to whether such conduct manifested deliberate indifference to the Defendants' broader duties (if they were duties) to investigate the cause of the multiple unexplained deaths and to pinpoint the causes so as to discover in a more timely fashion the death dealing actions of Vicki Dawn Jackson. It appears to me at this time that those duties are broader than the more narrow duties may give rise to negligence actions or negligence determinations by a jury in the state case. Such being the case, the question under *Pullman* becomes: "Will the decision of the court and jury on the narrower negligence grounds control the disposition

---

[2] or "deference"

[3] Three indictments (including at last one charging capital murder) charged Nurse Jackson with murder of ten persons of whom some were the decedents whose deaths form the gravamen of Plaintiffs' § 1983 actions.

*MEMORANDUM AND ORDER ON MOTION TO REINSTATE*                    *Page 3*

of the federal constitutional issues?" Clearly, negative determinations on all negligence issues would logically preclude a finding of "deliberate indifference" requisite to § 1983 liability as to all defendants. But positive findings of negligence by one or more or all of the defendants in one or more of these cases would not be determinative of the requisite deliberate or conscious indifference. The state law decisions will not render unnecessary or substantially modify the federal court constitutional questions. Accordingly, the conditions for the application of *Pullman* abstention are not presented here at this time.

Turning now to *Colorado River* justification for abstention (deference) to the state courts in the parallel cases, the Fifth Circuit has stated

> *[t]he pendency of a state court action in personam is no ground for abstention or stay of a like action in federal court, although the same issues are being tried and the federal action is subsequent to the state court action. The federal court may not abdicate its authority or duty in favor of the state jurisdiction.* Ermentrout v. Commonwealth Oil Company, *220 F.2d 527, 530 (5th Cir. 1955).*

Post-*Colorado River* jurisprudence further teaches that only "exceptional" circumstances will permit a federal court to refrain from exercising jurisdiction for reasons of wise judicial administration due to the presence of a concurrent state proceeding. 17A, Wright & Miller, Sec. 4247, p. 138. As recently as January 2006, the Fifth Circuit has examined a district court's decision to stay a case pending the outcome of parallel proceedings in state court. *In Stewart v. Western Heritage Insurance Co.*, 438 F.3d 488 (5th Cir. 2006), the court set forth and examined the six relevant factors that the Supreme Court has identified in determining whether "exceptional circumstances" exist. Those six factors are as follows:

1.   assumption by either court of jurisdiction over a *res*;

2.   relative inconvenience of the forums;

3.      avoidance of piece-meal litigation;

4.      the order in which jurisdiction was obtained by the concurrent forums;

5.      to what extent federal law provides the rules of decision on the merits; and

6.      the adequacy of the state proceedings in protecting rights of the party invoking federal jurisdiction.

Reviewing these same factors in this case, now that the state court criminal actions have been concluded, I find as follows:

1.      *Res* - neither this Court nor the state has assumed jurisdiction over any *res* in this case. This factor is neutral.

2.      *Inconvenience between forums* - when courts are in the same geographic location, the inconvenience factor weighs against abstention. The State court cases are pending in Montague County, Texas, which is within the Wichita Falls Divisions of the Northern District of Texas. Therefore, the inconvenience factor supports exercising federal jurisdiction.

3.      *Avoidance of piece-meal litigation* - Separate trial of the federal constitutional issues from the state negligence issues and bifurcation of liability from damage proof, as a result of this Court's prior order, does result in duplicative litigation. In both the state court negligence trial and trial of the constitutional issues in federal court the parties will have to plow much of the same factual ground, i.e., what facts transpired, what duties were performed or omitted by which defendants at what time during the course of Nurse Jackson's rampage from November 2001 through February 2002. Copies of the pleadings in the state court civil actions reflect that since the federal Constitutional issues were not raised there, the state court will not be determining those issues. It is clear, therefore, that leaving the negligence/malpractice issues to be tried by the state court while this Court tries the Constitutional issues would result in "piece-meal" litigation. Bringing all of the

causes of action into this Court would eliminate piece-meal litigation and render this factor to support exercising federal jurisdiction.

4.      ***The order in which jurisdiction was obtained*** - The instructions of the Fifth Circuit in the *Stewart* case are that the inquiry under this factor is "how much progress has been made in the two lawsuits?" This federal lawsuit has progressed through a discovery management order founded upon essential agreement among the parties establishing dates for written discovery, depositions, dispositive motion deadlines, trial preparation deadlines and a trial date. With regard to the state court proceedings, no trial date exists and little, if any, discovery has taken place. This federal case has clearly progressed further. For this reason, this factor favors exercising federal jurisdiction.

5.      ***Extent to which federal law governs the case*** - This case involves issues of state law as well as issues of federal law. This Court's jurisdiction in all but one of the cases is founded upon the federal question arising from the allegations of the § 1983 violations. In one case, this Court's jurisdiction is founded upon the Court's diversity jurisdiction. In diversity cases, the court is often called upon to apply state law with respect to negligence matters. Therefore, this factor is at most neutral.

6.      ***Adequacy of the state proceedings*** - This is a pure neutral factor. Both state and federal court can try the issues to conclusion.

Based upon the foregoing analysis, the *Colorado River* factors weight against abstention or at most remain neutral. Given that I must balance these factors in favor of the exercise of jurisdiction, continued abstention in this case at this time is inappropriate. The current procedural status and issues in these cases do not override the "virtually unflagging obligation of the federal courts to exercise jurisdiction given to them." *Colorado River*, 424 U.S. at 814, 817. Accordingly,

I have concluded that since none of the abstention or deference criteria apply now that the criminal cases against Nurse Jackson have concluded, Plaintiffs' previously dismissed causes of action for negligence and/or malpractice should be reinstated.

The Court is not unmindful that in reinstating the negligence causes of action this Court is opening the door to the return of the previously named defendants whom this Court dismissed from the § 1983 action on qualified immunity and defective pleading grounds. But the negligence cases went out as a whole and shall come back in as a whole unless the Plaintiffs elect to dismiss or amend their complaints to eliminate one or more of said persons as defendants.

Having made this determination, however, the Court is now presented with the necessity of reexamining the Court's prior bifurcation of the liability and damage issues and a consideration of whether the Constitutional issues and negligence issues should be tried together or separately before the same or different juries. These very issues were raised by the parties in argument during the September pre-trial conference.

Is separate trial of the negligence issues vis-à-vis the Constitutional issues warranted? Is bifurcation of the liability issues vis-à-vis the damages issues warranted? Should all or part of the issues be tried by one or more juries? Should discovery on damages be abated until liability has been established?

The net effect of the Court's prior order of dismissal of the negligence causes of actions, while retaining the § 1983 causes of action, had the same effect as ordering separate trials. Bringing these negligence causes of action back into this consolidated case raises the issue of whether separate trials of the Constitutional issues vis-à-vis the negligence issues is warranted. Justification for bifurcation and/or separate trials can be found in many cases in many circuits. Generally, such

*MEMORANDUM AND ORDER ON MOTION TO REINSTATE*                                        *Page 7*

bifurcation is said to rest within the sound discretion of the court taking into consideration whether (1) it would avoid prejudice, (2) it would be convenient to do so, or (3) it would be economical or would expedite the litigation to do so. *Laitram Corp. v. Hewlett Packard Company,* 791 F.Supp. 113 (E.D. La. 1992). But the Court must be mindful that the "issue to be tried [separately] must be so distinct and separable from the others that a trial of it alone may be had without injustice." *Swofford v. B & W, Inc.,* 336 F.2d 406, 415 (5th Cir. 1964), cert. denied, 379 U.S. 962, 13 L.Ed.2d 557, 85 S.Ct. 653 (1965).

Although the legal theories and issues for the negligence causes and the § 1983 causes are different, they arise out of the same conditions and events that prevailed at the Nocona hospital from November 2001 through February 2002 while the nurse ran amok on the wards. In this respect, trying both mattes in a single evidentiary presentation instead of two or more separate proceedings would be more convenience, expeditious and economical. The Court's concern with regard to this approach is twofold: (1) jury confusion - will a jury be able to distinguish facts implicating negligence by one or more of the defendants from the § 1983 "deliberate indifferent" standard? and (2) will presentation of the negligence evidence cause them necessarily to find deliberate indifference, thereby prejudicing the parties? How then may the two legal theories be tried together in one evidentiary presentation without risking jury confusion and/oir prejudice to the parties?

Judge Feldman in his *Laitrim* order in a patent case points the way to accomplish these objectives. Bifurcation is not unusual in patent litigation, though the trial courts have been admonished that bifurcation is not "the rule" and must be determined on a case by case basis. *Bieltomatic Leuze & Co. v. Southwest Tablet Mfg. Co.,* 204 U.S. P.Q. (BNA) 226,227 (N.D. Texas 1979). In the *Laitrim* case Judge Feldman laid out the considerations and criteria for bifurcation of

liability from damage issues in patent cases and concluded that the type of prejudice that may result from jury confusion contemplated by Rule 42(b) militated in favor of bifurcation damages from liability. Ibid. at p. 117. But having so determined to bifurcate those issues, Judge Feldman addressed the issue of prejudice to the plaintiffs by ordering a single trial before a single jury in three separate and distinct phases as opposed to separate trials. He proposed that in Phase 1 the jury would address the liability issue; in Phase 2 the ordinary damage issues; and in Phase 3 the court would address penalty damages.[4]

As indicated above, I have found that the § 1983 Constitutional issues are sufficiently distinct from the negligence/malpractice issues as to warrant a separate trial. I further find that trying the liability issues first, before addressing the damages issues, will expedite resolution of these cases, avoid confusion, probably decrease the length of trial, and will allow a jury to determine damages only in cases where liability has been determined. This being said, Judge Feldman's solution of using a single jury in a single trial, divided into multiple phases has much to commend it, especially in this case. Here the liability issues on negligence and § 1983 causes of action will plow the same factual ground with respect to all plaintiffs and all defendants. A single evidentiary presentation concerning the facts, acts and omissions that took place over the four month period while Nurse Jackson ran rampant in the Nocona Hospital instead of having either two or ten such presentations, promotes judicial economy, party economy, jury economy, expedites the judicial process and is convenient.

Having a single jury determine liability in all ten cases from one evidentiary presentation and

---

[4] Having the court instead of the jury assess penalty damages is unique to the patent case jurisprudence.

*MEMORANDUM AND ORDER ON MOTION TO REINSTATE*                                        *Page 9*

one record will allow the jury, and ultimately the Court, to avoid conflicting answers. Having the same jury thereafter (in Phase 2) retire to consider the grave Constitutional issues will allow the jury then to concentrate on those liability issues compared to the negligence issues previously considered.

Finally, in Phase 3, allowing the same jury to assess both actual damages and potentially punitive damages in a subsequent damage presentation will allow the jury to consider the damages on a victim by victim and liability by liability basis.

Further, the Court observes that a salutary result of this Court's chosen course of action herein is that in the one diversity case all of the issues will be tried in the same manner as the other causes and need not be singled out for special or alternative treatment.

Finally, with respect to Plaintiffs' urging the Court to restrict the currently planned discovery to liability issues only so that damages discovery by all parties would await the liability determinations by the jury(ies), I find that Judge Feldman's analysis is persuasive that discovery should proceed on all issues. When these cases were originally filed, both in state and federal court and were not then consolidated, the parties faced the prospect of having to proceed with discovery on damages along with liability facts. Consolidating the cases causes no additional duties or prejudice. Upon the jury finding liability issues, the damage issues will have already been prepared and there need be little delay between the time of liability findings and the consideration of the damage issues. Accordingly, the discovery program previously ordered shall not be restricted to liability issues solely.

This Court reasonably anticipates that upon the entry and dissemination of this Order, the state trial court will abate or stay further action in the causes of action pending before it in deference to this Court's proceeding to trial and judgment herein.

In accordance with the foregoing, **IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** that Plaintiffs' Motion to Reinstated Negligence Claims is hereby **GRANTED**. Plaintiffs may elect to file amended complaints incorporating the negligence issues as to all defendants (including those previously dismissed from the § 1983 action).

**IT IS FURTHER ORDERED** that the § 1983 and negligence causes, and the damages issues in each case, shall be and remain bifurcated, subject to phased determinations before a single jury of twelve veniremen in three phases. The first phase shall be the negligence liability phase; the second phase shall be the § 1983 liability phase; and the third phase shall be the damages phase during which both common law damages and punitive damages may be considered.

**IT IS FURTHER ORDERED** that Plaintiffs' request to restrict damage discovery pending liability determination is **DENIED**.

**IT IS SO ORDERED** this 23rd day of October, 2006.

<br>

**ROBERT K. ROACH**
**UNITED STATES MAGISTRATE JUDGE**