IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **CAROL JEAN JAMES** | § § § | 7:02-CV-0291-KA |
| | | Consolidated with: |
| VS. | § | 7:03-CV-004-KA |
| | § | 7:03-CV-005-KA |
| **NOCONA GENERAL HOSPITAL,** | § | 7:03-CV-006-KA |
| *et al.* | § | 7:03-CV-008-KA |
| | § | 7:03-CV-009-KA |
| | § | 7:03-CV-0022-KA |
| | § | 7:03-CV-0034-KA |
| | § | 7:03-CV-0040-KA |
| | § | 7:03-CV-0042-KA |

## MEMORANDUM AND ORDER ON MOTION TO COMPEL

On the 23rd day of April, 2007, the Court took under consideration **Plaintiffs' First Motion to Compel Interrogatories and Document Production**. After considering the Motion, the response, the parties' Briefs and their arguments, I find that portions of the Motion to Compel are well taken and should be granted, that certain of the Defendants' objections should be sustained in part and certain of the Defendants' objections should be overruled in part.

I find that the three sets of Interrogatories submitted to Defendants, Lynn Dingler, MD; Clarence Dingler, MD; and George Russell West, MD; were substantially the same and that the objections levied by said Defendants to the Interrogatories were substantially the same; and that the Interrogatory numbering system was the same. Accordingly, the Court's ruling as to each Interrogatory number shall be equally applicable to each set of Interrogatories. The same situation pertains to the Requests for Production. Accordingly, the Court will address each of the contested Requests and Interrogatories, and the parties' objections thereto, first as to the objections as to privilege and relevance, then by number.

Defendants leveled common objections to groups of the Interrogatories and Production Requests arising out of a common theme. With regard to Interrogatories Nos. 1 through 4 and Production Requests Nos. 90, 91 & 94, the Defendants leveled two essential grouped objections:

1. ***Relevance***: that the statistical data sought by the Interrogatories and Production Requests were irrelevant, not calculated to lead to any relevant evidence; that the burden of gleaning from the records the statistical conclusions sought by the Plaintiffs or producing the records from which such statistical gleaning could be formed was overburdensome; and

2. ***Privilege***: that the many, if not all, of the records/documents necessary for any relevant statistical determination are privileged and non-disclosable.

### Analysis as to Relevance

The statistical information sought by the Plaintiffs related to the number and causes of death that occurred among the universe of the Defendant physicians' patients before and during the December 2000 to February 2001 alleged rampage by Nurse Jackson at Nocona General Hospital. Source documents for such data from which the statistical data may be gleaned were the physicians' patients' files or charts. These files or charts involve not only patients who died at Nocona General Hospital during the rampage, but also all of the physicians' patients who died before or during the time of the rampage either at the hospital or at other places. Defendants assert that they may have had over 5,000 patients whose voluminous patient files would have to be gleaned to extract the data the Plaintiffs are requesting by way of interrogatory, that the gleaning process will cost tens of thousands of physician, employee and attorney time over several months. Defendants argue that if less than the full universe of all of the files of all of the physicians' patients are to be reviewed or produced, the statistical data sought by the Plaintiffs will be irrelevant and, besides, the statistical

data on patients who were not plaintiffs in this consolidated case are privileged: (a) under federal law (i.e., HIPAA); (b) under Rule 501, Federal Rules of Evidence, incorporating by reference state law as to claims and defenses for which state law will be determinative (i.e., medical and pharmaceutical malpractice causes); (c) under Rule 509, Texas Rules of Evidence; (d) under Rule 510, Texas Rules of Evidence; and (e) under federal and state decisional authority with regard to protected health information (PHI) of non-parties. Plaintiffs stridently assert that knowing and/or determining the number of patient deaths experienced by the individual physician defendants and/or their clinic, either at Nocona General Hospital or elsewhere, during the rampage time period and the periods immediately preceding the rampage will demonstrate or provide fodder for demonstrating through the depositions of the physicians either that they knew or should have known that an unusually high number of their patients were dying under suspicious circumstances or by suspicious causes at Nocona General Hospital during the rampage or, more specifically, prior to the deaths of the respective Plaintiffs' loved ones. This evidence Plaintiffs urge will establish that one, more or all or the defendant physicians were negligent in multiple respects, proximately causing the deaths of the Plaintiffs. I find that the statistical data sought by Plaintiffs in Interrogatories 1-4 and Production Requests Nos. 91, 92 and 94 are relevant or may lead to admissible evidence. This Court's overruling of Defendants' objections as to relevance of the statistical data sought does not indicate that such data or extractions or inferences made therefrom shall automatically be admissible. At this stage, if the Court determines that the evidence is relevant to the Defendants' knowledge or intent, the evidence may still be excluded at the time of trial under Federal Evidence Rule 403 if the Court concludes that its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of issues, misleading the jury or needless presentation of cumulative evidence. *See Fairchild v. Liberty ISD*, 466 F. Supp. 2d 817 (E.D. Tx 2006), Note 9, p. 17

Defendants desire to restrict the relevant time period to the period of the rampage, that is, December 2000 through February 2001. Defendants seek to restrict the number of records to be reviewed by themselves in answering the interrogatories or by the Plaintiffs incident to the production requests to only those patients who were treated at Nocona General Hospital and not at their clinic, other clinics and other nursing homes where the physicians regularly practiced. Plaintiffs concede that the Defendants may choose either to fully answer the Interrogatories Nos. 1 through 4 or to produce the documents pursuant to Requests Nos. 90, 91 and 94, but all should be completed by May 6, 2007 since Plaintiffs commence taking the physicians' depositions beginning May 7, which is only twelve days from now. Defendants say that twelve days is not enough time. Plaintiffs say that the Defendants should have already provided the answers since the Interrogatories and discovery Requests were served in January. Defendants complain that Plaintiffs did not timely file their Motion to Compel thereby causing their own time crunch. Defendants further complain that gleaning the records or producing them and all the copies will cost too much. Plaintiffs respond that there are ten cases consolidated together so Defendants' cost complaint is disingenuous.

During the hearing, Defendants represented that they had gleaned approximately 125 instances where the files and/or file folders of patients of the Defendant physicians contained or reflected that the patient had died during the term between 1999 through 2001 either at Nocona General Hospital or otherwise. Therefore, of the entire universe of the physicians' patients from 1999 through 2001, that set of approximately 125 patients and their records have now been identified as containing portions of the statistical data Plaintiffs have sought. Production of those records

which have currently been identified or allowing Defendants to glean the statistical information supplied in the answers to the Interrogatories can be accomplished promptly. If the documents are produced, they may be redacted appropriately. Production of these records, or the answers gleaned therefrom to answer Interrogatories 1-4, should occur before the depositions of the physicians begin.

## Defendants' Claims of Privilege

Defendants assert multiple grounds for their privilege objections, to-wit:

(1) that the requested information calls for the production or disclosure of Protected Health Information (PHI) of non-parties which is held privileged and exempt from discovery pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA); P 45 CFR § 164.512 and Fed. R. Civ. P. 26(b)(1). Defendants assert that the HIPAA Privacy Rule established in federal law the principle that medical information may not be disclosed without patient consent. For such general application of the "HIPAA Privacy Rule," Defendants cite the preamble, Standards of Privacy of Individual Identifiable Health Information: Final Rule, 65 Fed.Reg. 82461, Dec. 28, 2000, page 82471. Cf. The Privacy Act of 1974, 5 USC §552(a), as amended, and further rely upon The Patient Privacy Rights Act of 1998, asserting that therein Congress specifically recognized privacy interests attached to medical records.

(2) that the PHI of non-parties and their health information is "irrelevant" to the issues presented in this case;

(3) that the information sought or documents from which the information may be gleaned are subject to physician-patient privilege under Texas Evidence Rule 509;

(4) that the information is subject to the physician-patient privilege under Texas Evidence Rule 510;

(5) that the information sought is privileged under § 611.04 and § 611.045 of the Texas Health and Safety Code; and

(6) that the disclosure of such information violates the non-patient's privacy rights under the Texas and U.S. Constitutions.

## Analysis of Privilege

The federal courts have not adopted a physician-patient privilege. Proposed Rules 509 and 510 were rejected. Federal Evidence Rule 501 provides as follows:

> *Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the <u>common law</u> as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an <u>element of a claim or defense</u> as to which State law supplies the <u>rule of decision</u>, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law.* (emphasis added)

Insofar as trials are concerned, Rule 501 applies irrespective of the nature of the case or the basis of jurisdiction, the only issue is whether the law to be applied is the federal common law or the state law of privilege. 23 Wright and Miller, <u>Federal Practice and Procedure</u>, Sec. 5424, p. 702. In cases involving solely federal questions, clearly the federal common law applies. In federal proceedings such as diversity cases where state law supplies the substantive law for the determination of all of the issues, state evidentiary laws with respect to privilege apply. In cases where there are both federal law issues and state law issues, there is a split among the Circuits. Indeed, the Supreme Court of the United States in 1996 in *Jaffee v. Redmond*, 518 U.S. 1, 116 S. Ct. 1923, 135 L. Ed.2d 337 (1996), dodged the issue by stating:

> *We note that there is disagreement concerning the proper rule in cases such as this in which both federal and state claims are asserted in federal court and relevant evidence would be privileged under state law but not under federal law. See C. Wright & K. Graham, 23 <u>Federal Practice and Procedure</u>, Sec. 5434 (1980). Because the parties do not raise this question and our resolution of the case does not depend upon it, we express no opinion on the matter.*

In the absence of federal law on the subject, the Court may consider whether the policy of [the State] establishing certain privileges is sufficiently compelling in the light of reason and experience to be applied as a matter of federal common law. See *Solorzano v. Shell Chemical Co.*, 2000 U. S. Dist. Lexis 12072 (E.D. La, 2000) p. 3, citing *Jaffee v. Redmond*, <u>supra</u>.

The current consolidated cases contain both federal question matters (the § 1983 action) and state law determined matters (the medical malpractice and pharmacist malpractice negligence claims). Magistrate Judge Hines eloquently addressed a method for determining whether to apply the state evidentiary standard or create a new federal privilege in *Fairchild,* supra. Interpreting the Supreme Court and the Fifth Circuit's rulings, Magistrate Judge Hines determined that since only claims and defenses asserted in his case related to the federal § 1983 claims, the Texas Government Code provisions preventing disclosure of tapes or records made in closed sessions held pursuant to the Texas Open Meetings Act did not rise to the level necessary for the recognition of a privilege of such materials under Federal Evidence 501. In reaching this conclusion of law, Judge Hines articulated the criteria implicated by the Fifth Circuit in *ACLU of Mississippi, Inc. v. Finch,* 638 F.2d 1336 (1981) determining whether the court should apply state law "evidentiary privileges" in federal civil litigation.

### HIPAA Privilege

Defendants' HIPAA-based privilege argument is based upon the provisions contained in 45 CFR 164.512. Subparagraph (e) of that section permits disclosures for "judicial... proceedings... in response to a ...discovery request... if: ...the covered entity receives satisfactory assurance... from the party seeking the information that reasonable efforts have been made by such party to secure a *qualified protective order* that meets the requirements of paragraph (e)(1)(v) of this Section." That Section provides that "a *qualified protective order* means... an order of a court... that... Prohibits the parties from using or disclosing the protected health information for any purpose other than that litigation... and... Requires the return to the covered entity... of the protected health information (including all copies made) at the end of the litigation...." I find that paragraphs 1 and 14 of this

Court's previously entered Protective Order dated December 7, 2006 address these very requisites and, therefore, it constitutes such a "qualified protective order" within the ambit of paragraph (e); that the Defendants were given satisfactory assurances thereof; and that, accordingly, the mandatory conditions for disclosure of the "protected health information" pursuant to the Plaintiffs' discovery requests have been met. Accordingly, Defendants' HIPAA objection provides no basis for application of a privilege. Defendants' HIPAA objections to the Interrogatories and Production Requests should be overruled.

## Texas Evidence Rule 509

Subsection (e) of Texas Evidence Rule 509 provides an exception to the confidentiality or privilege of physician/patient communications in civil proceedings in court under seven defined conditions. Of those seven conditions, only condition four is potentially implicated in this case. Subdivision (4) of subsection (e) provides the exception "as to a communication or record <u>relevant</u> to an issue of the physical, mental or emotional condition of a <u>patient</u> in any proceeding in which <u>any</u> party relies upon the condition as a part of the party's claim or defense." In interpreting this exception to the physician-patient privilege, the Texas Court of Appeals in Corpus Christi held in *In re: Whiteley*, 79 S.W.3d 729, 732-34 (Tex.App.-Corpus Christi, 2002) that non-party patients' medical records become discoverable by a plaintiff if a Defendant physician on deposition in a malpractice case urges that he performed the same surgical procedure successfully on non-party patients, thereby creating an inference of the absence of negligence. Here, the Plaintiffs anticipate proving the reciprocal, that is, that the Defendant physicians' historical experience of suspicious or non-suspicious deaths among its patients will implicate either negligence or conscious indifference to the multiple suspicious deaths occurring during the rampage. Thus, complain the Plaintiffs, the

non-patient medical records are not privileged from disclosure even if Texas Evidence Rule 509 were applied either directly to the state-determined issues or as an explication of federal common law under Rule 501. I conclude that in light of the very exception to privilege created by subdivision (e)(4) of Rule 509, this Court should not be bound by Texas Rule 509, nor should this Court adopt such standard as explicating federal common law under Federal Evidence Rule 501.

### Texas Evidence Rule 510

Texas Evidence Rule 510 is directed toward confidentiality of mental health information and contains in subsection (d)(5) an exception similar to that in Texas Evidence Rule 509(e). Both Plaintiffs and Defendants concur that the mental health information of non-Plaintiff patients shall be redacted from any records that may be produced. Accordingly, the redaction of mental health information from the records of non-party patients of the Defendant physicians will meet the confidentiality requisites of Texas Evidence Rule 510 and the statutory requisites under Sections 611.04 and 611.045 of the Texas Health and Safety Code without the necessity of the requesting party to obtain informed consent from each patient. Therefore, the issue of privilege is not met.

### Texas and Federal Constitutional Privacy

The genesis of the recognition and progress toward protection of patients' privacy rights through the application of the U.S. Constitution and Texas Constitution in the context of patient medical records was articulated at length in *Pagano v. Oroville Hospital*, 145 F.R.D. 683 (E.D. Cal., 1993). After balancing the privacy interests against the federal policies favoring disclosure in the discovery and litigation context, the *Pagano* Court held that "subject to safeguarding the identities of the patients and physicians, the plaintiff was entitled to certain medical records. That court

proceeded then to impose a protective order containing the same elements as the Protective Order previously entered in this cause.

As with Judge Wilkinson in *Solorzano*, I am particularly reluctant to recognize such a privilege as a matter of federal common law when a narrowly drawn protective order of the type hereinbefore entered, short of recognition of broad ranging privilege, will suffice to accommodate any need for confidentiality of the records that might be responsive to Plaintiffs' discovery requests. *Solorzano*, supra., at page 19.

Based upon all of the foregoing, I find that Defendants' privilege objections should be overruled.

## RULING ON DEFENDANTS' OBJECTIONS

**IT IS ORDERED, ADJUDGED AND DECREED** as follows:

**Interrogatories Nos. 1, 2, 3 and 4**: Defendants' objections as to overbreadth in scope and time, privilege, relevance, harassment and burdensomeness are overruled. As to the approximately125 patients who Defendants have already identified as having died either at Nocona General Hospital or elsewhere during the time period 1998 through 2001 as discussed during the hearing, **Defendants shall answer from such records the information requested in Interrogatories Nos. 1, 2, 3 and 4 on or before the commencement of the taking of the depositions of the Defendant physicians, but not later than June 1, 2007.** Alternatively, Defendants may produce the documents containing the information in redacted form with respect to the approximately 125 identified patients before the commencement of such depositions in redacted form; provided, Plaintiffs agree to promptly reimburse Defendants' reasonable costs incurred in providing such copies.

Thereafter, within 90 days after the date of this Order, Defendants shall supplement either their answers or their production with respect to any subsequent determinations of other patients whose medical records within the possession of the Defendants reflect the patient's death during the period 1998 through 2001. Defendants need only produce or review patient records within their own possession and need not secure patient records from any third parties such as other nursing homes or clinics.

**Interrogatory No. 24:** Defendants' objection on the grounds of the prior protective order in this cause is overruled. Defendants' objection as to overbreadth is overruled. Defendants' objection as to privilege is overruled. **Each Defendant is directed to answer but only as to his own patients. Each Defendant will supply the answers prior to the commencement of the taking of his deposition by the Plaintiffs, but not later than June 1, 2007.**

**Interrogatory No. 36:** Defendants' objection as to exceeding the number of interrogatories is overruled. Defendants' objections as to privilege and irrelevance are overruled. **Each Defendant shall answer with respect to his own patients. Each Defendant is directed to answer prior to the commencement of the taking of his deposition by the Plaintiffs, but not later than June 1, 2007.**

**Production Request No. 61:** Defendants' objections incorporating by reference their response to Production Request No. 60 are overruled. Defendants will only produce those death certificates or autopsies of their own patients that they have in their own medical files or that they or their Clinic has or maintains, and need not obtain any death certificates or autopsy reports from any third persons. **Each Defendant shall produce the items prior to the commencement of the taking of his deposition by the Plaintiffs, but not later than June 1, 2007.**

**Production Request No. 64:** Defendants' objections as to lack of particularity is overruled. Defendants' objection as to overbreadth in scope is overruled. Defendants' objection to instruction #5 as being overly broad in time is overruled. Defendants' objection as to privilege and rights of privacy under the Texas and U.S. Constitutions and statutory law is overruled. **Defendants shall produce the death certificates that they have or maintain in their own patients' files or that their clinic has and maintains, but need not obtain death certificates from any third parties.**

**Production Requests Nos. 90, 91 & 94:** Defendants' objections to these Requests for Production are overruled; provided, however, Defendants are permitted to produce the documents responsive to Production Requests Nos. 90, 91 and 94 from the approximately 125 identified patients on or before the commencement of the taking of their respective depositions, in lieu of providing the answers to Interrogatories Nos. 1 through 4.

**Production Request No. 35:** Defendants' objection as to scope is overruled. Defendants' objection as to overbreadth in time is sustained. Defendants' objection as to irrelevance is overruled. **Defendants shall produce all of their written policies on practices and procedures within the scope of the Request as were in effect at any time during the period beginning January 1, 2000 and ending January 1, 2002. These policies shall be produced on or before the commencement of the taking of the first Defendant physician's deposition by the Plaintiffs, but not later than June 1, 2007.**

**Production Request No. 4:** Defendants' objection as to the instruction is overruled. Defendants' objection as to irrelevance is sustained. Defendants need not produce any reservation of rights letters.

**Production Request No. 28:**  Defendants' objection as to overbreadth in time is overruled. Defendants' objection as to irrelevance is overruled. Defendants' objection as to privilege is overruled. Defendants' objection as to rights of privacy under the U.S. and Texas Constitutions is overruled. **Defendants are directed to produce the documents in unredacted form not later than June 1, 2007.**

**IT IS SO ORDERED**, this 27th day of April, 2007.

_____
ROBERT K. ROACH
UNITED STATES MAGISTRATE JUDGE