IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| HAROLD GENE VANDERBURG | § § § § | Case 7:03-CV-008-KA |
| | | Consolidated IN: |
| | | 7:02-CV-291-KA |
| vs. | § § § | |
| NOCONA GENERAL HOSPITAL, *et al.* | § § § § | |

## MEMORANDUM, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

On the 3rd day of January, 2008 this Court conducted a Show Cause hearing for Plaintiff, Harold Vanderburg and his attorney, William A. Walsh, to show cause why they or either of them should not be held in contempt for their alleged failure and/or refusal to comply with this Court's Order of August 23, 2007 (document #225). Attorney William A. Walsh appeared in person on his own behalf and on behalf of his client, Harold Gene Vanderburg, who did not appear in person. Movant, John R. Fitch, the substituted executor of the estate of Billie J. Huggins, deceased, appeared by and through his attorneys, Jay Joseph Murray and Michael L. Parham. All announced ready to proceed.

This was a civil contempt hearing relating to the disposition of certain "settlement funds" arising from the financial settlement of approximately two million dollars paid by the insurance carrier for the Nocona Hospital's hired pharmacist. The total amount was paid to settle all of the causes of action against Defendant Fenoglio in all ten of the consolidated cases. A portion of those funds was allocated toward a settlement for the injuries to and death of Dorothy Vanderburg. This dispute with regard to the "settlement funds" was first brought to this Court's attention by a Motion to Substitute filed by Movant, John R. Fitch (document #178) filed March 13, 2007. On March 29, 2007, the Court conducted a hearing culminating in this Court's Memorandum and Order entered April 4, 2007 (document #189). John R. Fitch's Motion sought not only the substitution of himself but also asked this Court to enter

orders of some kind to divide and/or protect against the disposition of the "settlement funds." Rather than being drawn into an adjudication of their respective rights to the "settlement funds," this Court deferred to the counsel for the respective parties since they had "fiduciary responsibilities with respect to which the Court has the utmost confidence" that they "can be counted on to discharge their own fiduciary duties or in the event of a conflict may interplead the settlement funds." At no time during the hearing conducted March 29, 2007, nor thereafter on July 6, 2007 when Harold Vanderburg filed his Motion to Dismiss, nor thereafter on August 2, 2007 when Mr. Walsh communicated to the Court by letter regarding the scheduling of the hearing on his Motion to Dismiss, nor thereafter after the Court set a hearing on August 23, 2007 on his Motion to Dismiss, nor during the hearing, nor after the August 23, 2007 Order was entered, nor after 30 days following entry of that Order, nor following October 11, 2007 when Movant filed his Motion for Order to Show Cause, was it mentioned that the funds had been distributed. It was only on November 15, 2007 when Plaintiff/Respondent, Harold Vanderburg, acting through his attorney William Walsh, finally stated that in December 2006 the $80,267.50 settlement funds were "disbursed" and that the second $80,267.50 settlement check received in February 2007 "was cashed and the funds disbursed.... Thus, when this Court denied Mr. Vanderburg's Motion to Dismiss the case... and the funds were ordered to be placed in the registry of the Court, there were no funds." By his footnote Mr. Walsh stated "Note, that even the Motion to Substitute Plaintiff was filed March 13, 2007 *after* the funds were disbursed, thus Mr. Murray's clients were not parties to the lawsuit at the time."

## KEY ELEMENTS OF CIVIL CONTEMPT

This is a civil contempt proceeding. "A movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence: (1) that a court order was in effect, (2) that the order required certain conduct by the Respondent, and (3) that the Respondent failed to comply with the Court's order." *American Airlines, Inc. v. Allied Pilots Assoc.*, 228 F.3d 574 (5th Cir. 200) citing *Martin v. Trinity Industries, Inc.*, 959 F.2d 45, 47 (5th Cir. 1992). The American Airlines court went on to say

"The contemptuous actions need not be wilful so long as the contemnor actually failed to comply with the court's order. *American Airlines*, supra. at 581.

## THE ORDER

On August 23, 2007, this Court entered a Memorandum and Order on Harold Gene Vanderburg's Motion to Dismiss (document #180) wherein this Court ordered as follows:

> *Accordingly, unless John R. Fitch and Harold Gene Vanderburg enter into a joint depository agreement within thirty (30) days of the date of this Order whereby the settlement funds will be placed in escrow with a third party custodian, Plaintiff Harold Vanderburg is ordered to deposit all of the settlement funds into the registry of this Court to abide further orders of this Court.*

## FAILURE TO COMPLY

While on the witness stand during examination by Mr. Parham, William Walsh admitted that after August 23, 2007, neither he, on behalf of Harold Vanderburg, nor Harold Vanderburg himself, made a depository agreement with the other party nor deposited any funds into the registry of the Court. Walsh defended himself and Vanderburg by making four assertions:

1. Since Billie Huggins died during the pendency of her lawsuit, her heirs, if any, were never entitled to any settlement funds.

2. After Billie Huggins died, neither Mr. Murray nor Mr. Parham, while verbally claiming to represent some unknown heirs of Billie Huggins, never identified to Mr. Walsh their clients nor disclosed their names or relationships to Billie Huggins, and therefore neither Parham nor Murray had any standing to negotiate any terms regarding the split of the settlement funds until after they were already rightfully distributed to Harold Vanderburg for his use and benefit.

3. Even though the second settlement check was received in February 2007 until John R. Fitch was permitted by this Court by Order dated April 4, 2007 to substitute as a party, neither Mr. Murray nor Mr. Parham had any standing to negotiate the terms of a division of the settlement funds.

4. Neither Mr. Walsh nor his client had any obligation to withhold the distribution of the settlement funds for the benefit of anyone else and therefore they lawfully distributed the funds to Harold Vanderburg for his use and benefit prior to this Court entering its August 23, 2007 Order.

Based upon all of the foregoing, Walsh asserts that this Court had no authority or jurisdiction

for entering its August 23, 2007 Order, and besides, since the funds had already been distributed, it was impossible for Mr. Walsh or Harold Vanderburg to comply with it.

Mr. Walsh testified that he came into possession of one-half of the settlement funds ($80,267.50) from pharmacist Fenoglio's insurance carrier in December 2006 (so that he could distribute those funds to his client before Christmas) and that instead of holding the funds in an IOLTA or other form of trust account controlled by him, he disbursed the funds to an account he had established at a local bank in the name of "Harold Vanderburg Trust." Thereafter, in mid-February 2007, he received possession of the second settlement check ($80,267.50) from pharmacist Fenoglio's insurance carrier which he again distributed to the same "Harold Vanderburg Trust" account at the local bank. There was a conflict in Mr. Walsh's testimony as to the date he actually received the settlement check and as to when he made the deposit to the "Harold Vanderburg Trust" account. A transmittal letter dated February 19, 2007 accompanied the second settlement check which was sent by Federal Express. The fair inference from that testimony is that the check was received by Mr. Walsh several days later, certainly by February 22.[1] As to when the settlement check was deposited into the "Trust" account is unknown and in dispute. Mr. Walsh, by his Response to the Show Cause Motion, alleged that the second settlement check was disbursed on February 19, but later testified that he and Mr. Vanderburg had kept approximately $16,000.00 on account "for two or three months" before they were distributed to Harold Vanderburg. In any event, William Walsh testified that as of August 23, 2007 the "settlement funds" had been disbursed and that he no longer had control over those funds.

No documents were introduced reflecting the establishment of the "Harold Vanderburg Trust" or of the establishment of an account for that trust or of the deposits to or payments from that Trust or Trust account. There is no evidence of the terms of such trust or of who were the trustees or

---

[1] William Walsh's unsolicited post-hearing submission of a copy of the release tendered with the second settlement check confirms that the total tendered for the release by Harold Vanderburg was only $144,481.50, leaving $16,054.50 for the Huggins heirs. Even this amount was apparently wrongfully distributed by Walsh to his client, Harold Vanderburg.

beneficiaries or if they were one and the same. With respect to the distribution or disbursement of funds from the "Harold Vanderburg Trust," if one did exist, there is no evidence other than Mr. Walsh's personal testimony that he does not know what happened with regard to the funds in that account, whether they remained there or have been drawn down by Harold Vanderburg pursuant to his own control of the "Trust account."

Mr. Walsh justifies his distribution of the settlement funds in the manner reflected above by asserting that they were "rightfully distributed" to Harold Vanderburg to the exclusion of John R. Fitch or any of the heirs of Billie J. Huggins because:

1. when Billie Jean Huggins died, her wrongful death cause of action against all of the defendants for the death of her mother, Dorothy Vanderburg, died when Billie Jean died, leaving Harold Vanderburg the only surviving heir entitled to the proceeds from his wrongful death cause of action;

2. when Billie Huggins died, she was no longer a representative of Dorothy Vanderburg's Estate which owned the "survival action," that is, right of recovery for personal injuries and other damages sustained by Dorothy Vanderburg prior to her death, leaving only Harold Vanderburg as the only proper representative of her Estate;

3. that Harold Vanderburg, as the son of Dorothy Vanderburg and rightful heir, was the only one with standing to pursue the survival action. Since he was an heir and no legal representative of the Estate of Dorothy Vanderburg had been appointed, only he had standing and capacity to bring the survival action and only he was entitled to any "settlement" proceeds therefrom.

So argues Mr. Walsh, that when he was approached by Mr. Murray and Mr. Parham in November 2006 during the course of the parties' negotiations with pharmacist Fenoglio's insurance carrier, regarding a possibility of dividing the proceeds of the settlement with Billie Huggins' heirs, Mr. Walsh and Harold Vanderburg could ignore the interest, if any, of Billie Huggins' heirs, whoever they were. Mr. Walsh's argument fails at its foundation like a house of cards.

As set forth in this Court's Memorandum of April 4, 2007, the Texas Survival Statute, Sec. 71.021, Texas Civil Practice and Remedies Code, abolished the common law rule that a cause of action for personal injury abates when the injured person dies. Under the Survival Statute, either an heir or a

representative of the estate is allowed to pursue the decedent's personal injury claim. *See also* 28 Tex.Jur.3d, Damages, Sec. 55, pp. 65-66 The survival statute does not *create* a new cause of action; it merely permits the injured person's cause of action to survive his/her death. *Kramer v. Louisville Memorial Hosp.*, 858 S.W.2d 397, 401 (Tex. 1993). A cause of action (historically called a "chose in action") is property. 59 Tex.Jur.III, Sec. 2, pg. 630-631 citing *Adams v. Great American Lloyd's Ins. Co.*, 891 S.W.2d 769 (Tex.App.-Austin, 1995, reh. overruled Feb. 22, 1995); *Day v. Day*, 896 S.W.2d 373 (Tex.App.-Amarillo, 1995). A chose in action is a right to proceed in a court of law to recover a sum of money. *Adams*, supra. A chose in action is subject to sale or assignment. *Foster v. Langston*, 170 S.W.2d 250. The right to sue for damages for tort is a "chose in action" and "property." *North Texas Traction Company v. Hill*, 297 S.W. 778 (Tex.Civ.App.-El Paso, 1927, writ ref'd). A chose in action is property even in the probate court. *See* Texas Probate Code, Sections 3(cc) and (2).

As property, the survival cause of action was subject to being inherited but subject to the administration of an estate if the administration is commenced. When Dorothy Vanderburg died, her chose in action, as property, vested in Billie Huggins, her daughter, and Harold Vanderburg, her son, subject only to any administration if an administration is commenced. When Billie Huggins died, her interest in the survival action passed as property to her heirs, subject only to the administration of her estate if an administration is commenced. During the time that pharmacist Fenoglio's insurance carrier was negotiating for a settlement and distribution of the settlement proceeds among all of the ten plaintiff groups, including Harold Vanderburg and Billie Huggins, Billie Huggins' interest in the survival chose in action had already vested in her heirs. Therefore, in December 2006 and again in February 2007, when William Walsh received the two settlement checks (ostensibly for the death action and the survival action), Billie Huggins' heirs were vested with an undivided interest in the cause of action being settled and by virtue of that vested interest owned an interest in the settlement proceeds and the checks representative thereof.

As a last gasp argument, William Walsh reasserted the argument he made in his opposition to

Fitch's Motion to Substitute, that the interest of the heirs of Billie Huggins in the survival action was waived or precluded by estoppel by reason of John Fitch's statement in the Inventory he filed in Billie Higgins' Estate stating that the estate had no claim against the estate of Dorothy Vanderburg. This alleged statement was made by John Fitch in his capacity as executor of the Huggins' Estate. In that capacity Fitch could not and did not waive or forfeit the vested interest the heirs (including Fitch himself) inherited. William Walsh and his client, Harold Vanderburg, ignored that vested interest of the Huggins' heirs interest to their detriment.

## FINDINGS OF FACT

I find the following facts from the evidence:

1. On August 23, 2007, this Court entered its Memorandum and Order on Harold Gene Vanderburg's Motion to Dismiss;

2. Within 30 days from the date of the August 23, 2007 Order, Plaintiff Harold Gene Vanderburg did not enter into a depository agreement with John R. Fitch whereby the settlement funds would be placed in escrow with a third party custodian;

3. After 30 days from the date of the August 23, 2007 Order, Plaintiff Harold Gene Vanderburg did not deposit any settlement funds into the registry of this Court;

4. Plaintiff Harold Gene Vanderburg was aware of this Court's Order of August 23, 2007;

5. Harold Gene Vanderburg wholly failed to comply with this Court's Order of August 23, 2007;

6. Harold Gene Vanderburg has not established that it was impossible for him to comply with this Court's Order of August 23, 2007;

7. Harold Gene Vanderburg has wholly failed to show cause why he should not be held in contempt of this Court for failing and refusing to obey this Court's Order of August 23, 2007;

8. William A. Walsh was aware of this Court's Order of August 23, 2007;

9. William A. Walsh aided and abetted Harold Gene Vanderburg in failing and refusing to comply with this Court's Order of August 23, 2007;

10. John R. Fitch and one or more heirs of Billie J. Huggins inherited immediately upon her death an undivided interest in the survival action of Dorothy Vanderburg;

11. Before William A. Walsh received either of the settlement checks he was aware that Billie Huggins had died, that she had one or more heirs, and knew that Jay Murray and Michael Parham were asserting on behalf of such heirs their interest in the survival action;

12. In February 2007, when he received the second of the settlement checks, William A. Walsh had been involved in extensive negotiations with Jay Murray and Michael Parham with respect to the interests of Billie Huggins' heirs in the proceeds from the survival action;

13. Agreement was never reached between William A. Walsh and representatives of the heirs of Billie Huggins as to how much of the settlement proceeds were allocated to the survival action versus the death action or how much was allocable to the heirs of Billie Huggins;

14. Notwithstanding his knowledge of the claims being made by Mssrs. Murray and Parham on behalf of the heirs of Billie Huggins, William A. Walsh nonetheless distributed the full amount of the settlement proceeds to Harold Vanderburg;

15. William A. Walsh took possession of at least $40,000.00 of the settlement funds as his attorney's fee for handling the case and settlement;

16. As of August 23, 2007, William A. Walsh was not in possession of the settlement funds, they having been previously distributed to the "Harold Vanderburg Trust";

17. Harold Gene Vanderburg is in contempt of this Court and of its Order of August 23, 2007;

18. William A. Walsh has aided and abetted Harold Gene Vanderburg in his contempt of this Court and of its Order of August 23, 2007;

19. There is insufficient evidence before this Court to reflect whether the $120,000.00 of settlement funds previously distributed to the "Harold Vanderburg Trust" have been dissipated or remain with Mr. Vanderburg; and

20. There is insufficient evidence that it was impossible for Harold Gene Vanderburg to comply with this Court's Order of August 23, 2007.

21. At the time the settlement proceeds were distributed by the insurance company, no separate allocation was made as to the portions of the settlement amount to be allocated between the survival action and the death action so the Court was and is unable to determine how much of the settlement proceeds have been taken from the Huggins' heirs.

## CONCLUSIONS OF LAW

1. The heirs of Billie Huggins, at all times after the death of Billie Huggins, have owned an undivided interest in the survival action for the personal injuries and damages to Dorothy Vanderburg.

2. The Huggins heirs' interest in the survival action and the proceeds thereof were not waived or precluded by estoppel or forfeited by the action of John Fitch in the administration of the Estate of Billie Huggins.

3. The heirs of Billie Huggins (including John R. Fitch) own an undivided interest in the settlement funds distributed to William A. Walsh in December 2006 and February 2007.

4. By their intentional actions, William A. Walsh and Harold Gene Vanderbug have wrongfully converted and intentionally deprived the Huggins' heirs of their interest in the settlement funds.

5. Because of his tortious and wrongful conduct, William A. Walsh should be made to disgorge the fruits of the breach of his duties as an individual, as an attorney, and as an officer of this Court until such time as a full determination can be made of the amount of the interest of the Huggins' heirs in the survival action.

6. Because of his contempt, Harold Gene Vanderburg should be required to comply with this Court's orders.

7. Since the exact value of the undivided interest of the heirs of Billie Higgins is undetermined, it appears that approximately 1/4 of the total settlement funds is reasonably ascribable to their interest. Accordingly, instead of requiring the full amount of the settlement proceeds to be placed into the registry of the Court, I find that the appropriate amount should be $40,000.00.

In order that this Court's orders may be obeyed, this Court **ORDERS** that William A. Walsh and Harold Gene Vanderburg disgorged themselves of the sum of $40,000.00 and cause the same to be placed in the registry of this Court within fifteen (15) days from the date of entry of this Order, said funds to abide further orders of the Court and thus to purge themselves of their contempt.

In the event the funds are not thus placed into the registry of this Court within the time period allotted, this Court shall conduct a hearing on Monday, February 4, 2008, for the purpose of determining if, and to what extent, Harold Gene Vanderburg has been "unable" to comply with this Court's Order of August 23, 2007 or this Order; and to consider what additional sanctions, including but not limited

to striking pleadings, entering default judgment, assessing of attorneys' fees, costs and expenses, and/or confinement, should be imposed to secure compliance.

**IT IS SO ORDERED**, this 10th day of January, 2008.

*[signature]*
**ROBERT K. ROACH**
**UNITED STATES MAGISTRATE JUDGE**